United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA ANNE CALKOSZ,<br><br>        Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Commissioner,<br>Social Security Administration,<br><br>        Defendant.<br>_____/ | No. C-13-1624 EMC<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>**(Docket Nos. 12, 14)** |

On July 3, 2008, Plaintiff Patricia Anne Calkosz filed an application for disability insurance benefits under Title II of the Social Security Act ("Act"). *See* Administrative Record ("A.R.") at 109. The application was denied on February 23, 2010, after which Ms. Calkosz requested a hearing before an administrative law judge ("ALJ"). A.R. at 106. A hearing was held before an ALJ on February 1, 2010 and a remand hearing on November 14, 2011. Subsequently, on December 19, 2011, the ALJ issued his decision, concluding that Ms. Calkosz was "capable of making a successful adjustment to other work" and was therefore not "disabled" under the Act. A.R. at 22.

Ms. Calkosz has exhausted her administrative remedies with respect to her claim of disability. This Court has jurisdiction for judicial review pursuant to 42 U.S.C. § 405(g). Ms. Calkosz has moved for summary judgment, seeking a reversal of the Commissioner's decision and a remand for a rehearing "for proper consideration of the opinion evidence and Plaintiff's credibility." The Commissioner has cross-moved for summary judgment. Having considered the parties' briefs and accompanying submissions, including but not limited to the administrative record, and good

cause appearing therefor, the Court hereby **GRANTS** Defendant's Cross Motion for Summary Judgment, **DENIES** Ms. Calkosz's Motion for Summary Judgment.

## I. FACTUAL & PROCEDURAL BACKGROUND

On July 3, 2008, Plaintiff Patricia Calkosz ("Calkosz") filed an application for disability insurance benefits, with the Social Security Administration ("SSA"), alleging a disability onset beginning August 21, 2007 arising from fibromyalgia and chronic fatigue syndrome ("CFS"). A.R. at 109, 223. Initially, the SSA denied the application in September 2008 and again on reconsideration in March 2009. A.R. at 109, 127-130. Calkosz requested a hearing before an ALJ. On February 23, 2010, the assigned ALJ, John Heyer, denied her claim after a hearing held on February 1, 2010. A.R. at 106, 109.

On March 8, 2010, Calkosz sought review of that decision by the Appeals Council. A.R. 159. On July 20, 2011, the Appeals Council issued its order granting the request, vacated the hearing decision, and ordered remand of the matter for further consideration of: (1) Calkosz's maximum residual functional capacity ("RFC"), including (a) substantiating "assessed limitations" with specific references to evidence in the record and (b) evaluating medical source opinions and explaining weight given to such opinions; (2) Calkosz's mental impairments using a special technique (20 C.F.R. 404.1520A), including documenting application of the technique by articulating specific findings for each functional area; and (3) supplemental evidence from a vocational expert to clarify the effect of "assessed limitations" on Calkosz's occupational base.[1] A.R. at 10, 124-125.

Pursuant to the remand order, Calkosz was given an additional hearing, which was held on November 14, 2011. *Id*. Calkosz was represented by counsel and testified at the hearing. A.R. at 10. On December 19, 2011, the ALJ issued his hearing decision explaining the rationale behind finding that Calkosz was "not disabled." A.R. at 7-22. In reaching his decision, the ALJ undertook the five-step sequential evaluation process, provided for by 20 C.F.R. §§ 404.1520 and 416.920:

---

[1] The Appeals Council also consolidated a subsequent claim for Title II benefits filed on April 18, 2011.

> "Step one disqualifies claimants who are engaged in substantial gainful activity from being considered disabled under the regulations. Step two disqualifies those claimants who do not have one or more severe impairments that significantly limit their physical or mental ability to conduct basic work activities. Step three automatically labels as disabled those claimants whose impairment or impairments meet the duration requirement and are listed or equal to those listed in a given appendix. Benefits are awarded at step three if claimants are disabled. Step four disqualifies those remaining claimants whose impairments do not prevent them from doing past relevant work. Step five disqualifies those claimants whose impairments do not prevent them from doing other work, but at this last step the burden of proof shifts from the claimant to the government. Claimants not disqualified by step five are eligible for benefits."

*Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003). The ALJ found that Calkosz had not engaged in substantial gainful employment since August 21, 2007, possessed several severe impairments (*i.e.*, fibromyalgia, CFS, panic disorder, and depression), and did not possess an impairment that meets or medically equals the severity of a listed impairment (20 C.F.R. 404.1520(d) and 303.1526). A.R. at 12. Ultimately, based on his conclusion that Calkosz had the "residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a)" and other evidence in the record, the ALJ found that Calkosz could not perform relevant past work yet found that she was "not disabled" at "step five" because she was "capable of making a successful adjustment to ***other work*** that exists in significant numbers in the national economy." A.R. at 14, 22 (emphasis added).

On January 17, 2012, Calkosz sought review of the ALJ's decision by the Appeals Council. A.R. at 6. On February 21, 2013, the Appeals Council denied this request, which rendered the ALJ's decision final. A.R. at 1. Accordingly, Calkosz has exhausted her administrative remedies and thus filed the instant complaint seeking judicial review of the decision, pursuant to 42 U.S.C. §405(g).

## II.  DISCUSSION

A.  Legal Standard

The district court may disturb the final decision of the SSA "only if it is based on legal error or if the fact findings are not supported by substantial evidence." *Sprague v. Bowen*, 812 F.2d 1226, 1229 (9th Cir. 1987). "Substantial evidence, considering the entire record, is relevant evidence

3

which a reasonable person might accept as adequate to support a conclusion." *Matthews v. Shalala*, 10 F.3d 678, 679 (9th Cir.1993). Substantial evidence is "more than a mere scintilla, but less than a preponderance." *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990) (internal quotation marks omitted). The court's review must "consider the record as a whole," both that which supports as well as that which detracts from the Secretary's conclusion. *Desrosiers v. Secretary of Health & Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "If the evidence admits of more than one rational interpretation, [the court] must uphold the decision of the ALJ." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

B.  <u>Residual Functional Capacity Determination</u>

The ALJ found that Calkosz was not disabled because she could perform "other work." A.R. at 22. Central to that finding is the ALJ's determination that Calkosz had a residual functional capacity to perform "sedentary work," as defined in 20 C.F.R. 404.1567(a). The ALJ determined that Calkosz's residual functional capacity meant she could only lift up to ten (10) pounds, stand or walk up to two (2) hours, sit up to six (6) hours, and perform simple repetitive tasks. A.R. at 14. By contrast, Dr. Hassler, one of Calkosz's treating physicians, opined she could only perform "less than sedentary physical exertion," meaning she could sit, stand, or walk fewer than two (2) hours, rarely lift more than ten (10) pounds, would miss work more than four (4) days per month, in addition to other limitations. A.R. at 19. Counsel for Calkosz elicited testimony from the vocational expert, Mr. Kenneth Ferra, who testified at the November 14 hearing, that a person with such limitations would be "unemployable," or disabled as a practical matter. A.R. at 22.

Calkosz attacks the ALJ's determination of her residual functional capacity, arguing the ALJ committed two errors. First, Calkosz argues that the ALJ failed to give controlling weight to the opinion evidence of Dr. Hassler, a treating physician, concerning her residual functional capacity, in addition to failing to provide specific reasons for doing so. Second, the ALJ failed to articulate specific reasons for discounting the weight given to statements Calkosz made concerning the "intensity, persistence and limiting effects" of her symptoms. Accordingly, the critical question in this appeal is whether the ALJ erred in discounting her testimony concerning her residual functional capacity.

1. Opinion Testimony of Dr. Hassler

As an initial matter, the Court notes it is undisputed that Calkosz was diagnosed with fibromyalgia, CFS, and depression. *See* Docket No. 14 (Cross-Motion for Summary Judgment, at pg. 7) ("That Plaintiff was diagnosed with fibromyalgia, CFS and depression is not in dispute."). Rather, the key dispute is the extent to which Calkosz's symptoms limit her residual functional capacity. A claimant's "residual functional capacity" means the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." *Reddick v. Chater*, 157 F.3d 715, 724 (9th Cir. 1998). Put more simply, it means "the most [she] can still do despite [her] limitations ... based on all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a). "The process involves an assessment of physical abilities and then of the nature and extent of physical limitations with respect to the ability to engage in work activity on a regular and continuing basis." *Cota v. Comm'r of Soc. Sec. Admin.*, No. C-08-00842 SMS, 2009 WL 900315, at *8 n. 5 (E.D. Cal. Mar. 31, 2009) (citing 20 C.F.R. § 404.1545(b)). Occasional symptom-free periods and even sporadic ability to work is still consistent with complete disability. *Reddick*, 157 F.3d at 724.

As noted above, Calkosz's treating physician, Dr. Hassler, determined her residual functional capacity to be less than sedentary work. This conclusion was somewhat corroborated by another treating physician, Dr. Targoff, who opined that Calkosz would be limited to "less than sedentary physical exertion." A.R. at 20. The ALJ explained why Dr. Hassler's opinion concerning Calkosz's residual functional capacity was not accorded controlling weight:

> "Dr. Hassler's opinion that the claimant assessment that the claimant is limited to less than sedentary is not entitled to controlling weight because it is ***without substantial support*** from the other evidence of record, which obviously renders it less persuasive. The doctor apparently ***relied quite heavily on the subjective report of symptoms and limitations provided by the claimant***, and seemed to uncritically accept as true most, if not all, of what the claimant reported. Yet, as explained elsewhere in this decision, ***there exist good reasons for questioning the reliability of the claimant's subjective complaints***."

A.R. at 20 (emphasis added).

///

///

Calkosz contends the ALJ's failure to accord Dr. Hassler's residual functional capacity determination controlling weight was erroneous.  Moreover, if the Dr. Hassler's opinion was so discounted, the ALJ should have identified how (or what parts of) Dr. Hassler's opinion was contradicted by the record.  Calkosz also contends that the ALJ also failed to assess Dr. Hassler's opinion considering other factors – (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability (*i.e.*, amount of evidentiary support for an opinion), (4) consistency with the record, (5) specialization (*i.e.*, more weight given to opinions within a physician's specialty), and (6) "[o]ther factors" that tend to support or contradict an opinion.  20 C.F.R. § 404.1527(c)(2).

In the Ninth Circuit, courts "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Generally, more weight should be given to a treating physician's opinion than to those who do not treat the claimant. *Id*.  A treating physician's opinion that is given controlling weight "must be adopted." *See* Social Security Ruling ("SSR") 99-2p ("Giving Controlling Weight to Treating Source Medical Opinions," at ¶ 6).[2]  To accord a treating physician's opinion controlling weight, the opinion must be (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "'not inconsistent' with the other substantial evidence in the case record." *See Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  "Not inconsistent" means that "no other substantial evidence in the case record ... contradicts or conflicts with the opinion"; "substantial evidence" means "more than a mere scintilla" such that a "reasonable mind would accept as adequate to support a conclusion."  SSR 96-7p (Explanation of Terms).

As a treating physician, Dr. Hassler's opinion is ordinarily accorded controlling weight. However, the ALJ refused to do so because it was "without substantial support from the other

---

[2] "SSRs do not carry the 'force of law,' but they are binding on ALJs nonetheless." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009).  The Ninth Circuit gives them deference so long as they do not produce "a result inconsistent with the statute and regulations." *Bunnell v. Sullivan*, 947 F.2d 341, 346 n. 3 (9th Cir. 1991).

evidence of record" and he "relied quite heavily on the subjective report of symptoms and limitations provided by the claimant," despite "good reasons for questioning the reliability of the claimant's subjective complaints." A.R. at 20.

Where a treating physician's opinion is contradicted by another physician's opinion, then the ALJ may reject the treating physician's opinion if he or she provides "specific and legitimate reasons" supported by substantial evidence in the record for so holding. *See Reddick*, 157 F.3d at 725 ("Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing."). The opinion of a nonexamining physician cannot by itself constitute substantial evidence justifying rejection of the treating physician's opinion. *Lester*, 81 F.3d at 832. Nonetheless, "[t]he ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751 (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

Here, the ALJ cited several "specific and legitimate reasons" supporting his rejection of Dr. Hassler's opinion on Calkosz's residual functional capacity.

First, the ALJ reviewed Calkosz's medical records (in particular, medical examinations); while they indicate some limited range of motion and fair muscle strength, the physical examination results were otherwise "essentially unremarkable." For instance, the ALJ referenced a March 2008 examination in which noted that Calkosz "had some of the spot test positive for fibromyalgia but the rest of the examination was normal." A.R. at 18. Similarly, he referenced a September 2008 physical examination that "revealed normal gait, negative SLR, and claimant was neurologically in tact." *Id.*

Second, the ALJ accorded the opinion of Dr. Shertock, a consulting physician who performed a psychological evaluation, "substantial probative weight." Dr. Shertock opined that Calkosz was able to "simple and repetitive tasks" and "maintain concentration, persistence" because it was "consistent with the medical evidence." Dr. Shertock's assessment is supported by the

objective medical evidence in the form of physical examinations referenced above, where symptoms consistent with her impairments were identified yet the results were otherwise normal.

Third, the ALJ also gave some weight to the opinion of Dr. Chen, a consulting physician who evaluated Calkosz for "Social Security purposes," in which Dr. Chen opined that her physical examination "was within normal limits," and that she was "neurologically intact" and "capable of medium work." A.R. at 18. The ALJ gave Dr. Chen's residual functional capacity assessment "reduced probative weight" acknowledging it was somewhat at odds with the medical evidence which supported different limitations. Nonetheless, it was not erroneous to give Dr. Chen some probative weight. "It is not necessary to agree with everything an expert witness says in order to hold that his testimony contains 'substantial evidence.'" *Magallanes*, 881 F.2d at 753 (quoting *Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir. 1988) (internal citations omitted)).

Fourth, the ALJ credited the opinion of Dr. Lee, a state agency consultant, who completed a "mental residual functional capacity assessment" in September 2008 which indicated Calkosz was only "moderately limited in her ability to understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with or proximity to others without being distracted by them, complete a normal workday and workweek ... " A.R. at 19.

Finally, Dr. Hassler's evaluation of Plaintiff's functional capacity was based in large part on Calkosz's self-reported symptoms and limitations *See, e.g.,* A.R. at 19-20, 423-27, 575-85. Dr. Targoff, another treating physician, who saw Calkosz relatively infrequently, diagnosed Calkosz with fibromyalgia, similarly assessed Calkosz's residual functional capacity as "less than sedentary physical exertion," but also based her opinion largely on self-reported symptoms and limitations. Although it is improper to reject a treating physician's opinion based entirely on his reliance on self-reported symptoms, "[a]n ALJ may reject the treating physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (affirming rejection of treating psychiatrist's opinion that was based heavily on claimant's subjective complaints only after such complaints were "properly discounted"). As addressed more fully below, the ALJ found Calkosz's subjective complaints regarding symptoms

and limitations not credible.  The importance of the credibility of subjective complaint is underscored where, as here, the underlying condition is one that defies objective clinical findings. *Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 872 (9th Cir. 2004) ("Fibromyalgia is a medical label that, as [claimant] correctly argues, cannot be objectively proved.").

On this record, the Court cannot say that the ALJ's specific and legitimate reasons for discounting or rejecting the opinion of Dr. Hassler lacked a substantial basis in the record.

### 2. Testimony of Calkosz

Because the ALJ already found that Calkosz produced evidence of an underlying impairment, the subjective allegation at issue here is whether Calkosz's symptoms of pain and fatigue were of such a severity to justify a finding that she was "disabled."  Absent evidence of malingering, an ALJ must offer "specific, clear and convincing reasons" for rejecting a claimant's subjective symptom testimony.  *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004) (noting that for an ALJ to discount the "severity of [claimant's] symptoms" he must do so with "specific findings stating clear and convincing reasons for doing so"), quoting *Smolen v. Chater*, 80 F.3d 1273, 1281–82, 1284 (9th Cir. 1996)).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998), quoting *Lester*, 81 F.3d at 834.  Additionally, a "finding that a claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain."  *Light v. Comm'r of Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). "In weighing a claimant's credibility, the ALJ may consider her reputation for truthfulness, inconsistencies either in her testimony or between her testimony and her conduct, her daily activities, her work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. " *Gordon v. Astrue*, No. C-10-1198 GGH, 2011 WL 3740832, at *5 (E.D. Cal. Aug. 24, 2011), citing *Smolen*, 80 F.3d at 1284). *See also Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (similar).

1    Although the findings here are not extensive, they are sufficient to support the ALJ's decision to discount Calkosz's testimony. *See e.g.*, *Crane v. Shalala*, 76 F.3d 251, 254 (9th Cir. 1996) (affirming rejection of claimant's testimony as "not fully credible and not consistent with the objective findings" despite fact that "findings upon which this determination was based were not as extensive as they might have been" because record indicated substantial evidence of ALJ's evaluation of claimant's testimony, including consideration of "daily activities, the notes of the treating therapist, and the evidence suggesting that he responded well to treatment for depression"). While the ALJ did not specifically quote precise testimony, he did, however, call into question any "statements concerning the intensity, persistence and limiting effects of these symptoms" and cited specific testimony concerning her daily activities inconsistent with her testimony of her residual functional capacity.

The ALJ identified facts in the record to properly disregard Calkosz's subjective allegations of her limitations. The ALJ first considered the objective medical evidence, which is a factor. *See Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."). For instance, he considered a physical examination conducted by Dr. Seebach in which she opined that Calkosz's overall examination was normal, that her joints were normal, and that she could walk albeit slowly. A.R. at 16. He also considered the opinion of Dr. Lewis, to whom Calkosz was referred for treatment of pain. In fairness, Dr. Lewis' findings were somewhat mixed: he opined Calkosz had no skin breakdown/tendinitis, full range of motion, and was ambulating well, yet noted multiple tender areas, that Calkosz refused further examination due to severe pain, and lost some range of motion in her neck/back. A.R. at 16. In regards to fatigue, the ALJ also considered the opinion of Dr. Lu, who conducted a sleep study of Calkosz, in which he concluded she did not suffer from a sleep disorder yet experienced several arousals of an unknown cause. A.R. at 16. Finally, the ALJ considered monitoring of Calkosz's symptoms by Optimus Medical Group. Reports from these examinations show they were "within normal limits" and that most physical examinations were normal. A.R. at 17.

The ALJ also considered the course of treatment. Specifically, although Calkosz received treatment for her disabling impairments, the ALJ noted that the course of treatment "ha[d] been conservative in nature," which is a relevant consideration in assessing the claimant's credibility. *See e.g.*, *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (affirming ALJ's decision to discount claimant's testimony concerning functional limitation in part because treating physician "prescribed only 'conservative treatment'" for alleged "debilitating pain").

Finally, the ALJ noted that Calkosz's "daily activities [were] not limited to the extent one would expect," which appeared quite probative in his estimation:

> "She tango dances, listens to music, takes care of her cat, uses the Internet for e-mail and Facebook, watches DVDs, reads, and does light cooking. She sweeps, does dishes, and cleans her bathroom. She goes to Walgreens and grocery shops. She is able to take her cat to the vet and goes to the library. When she takes her cat to the vet, she carries it in a carrying case. She goes grocery shopping in Chinatown and goes to Kinko's to photocopy. She also likes to draw. This broad range of daily activities is not consistent with a finding of total disability."

A.R. at 18. *See also* A.R. at 16 (records describing her activities in 2009). "[I]f a claimant engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities." *Burch*, 400 F.3d at 681 (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

The foregoing supports the ALJ's assessment of Calkosz's credibility in asserting her limitations which in turn informed the ALJ assessment of her residual functional capacity of sedentary work. Although Calkosz faults the ALJ for not crediting the "[m]ost compelling" testimony that "she generally spends eighteen to twenty hours per day in bed due to fatigue and pain" (Docket No. 12 (Mot. at pg. 20)), it was not unreasonable for the ALJ to accord little weight to this self-serving testimony, which was elicited by Calkosz's attorney on re-examination. A.R. 67. In sum, the ALJ offered specific, clear and convincing reason to discredit Calkosz's testimony about pain and fatigue. *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir.1995) (where evidence is susceptible to more than one rational interpretation, then ALJ's interpretation must be upheld). *See also Burch*, 400 F.3d at 679 (upholding ALJ's conclusion that claimant was "quite functional" in part because she was "able to care for her own personal needs, cook, clean and shop").

11

### III. CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** Defendant's Cross-Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment. The judgment of the ALJ is affirmed. Judgment is entered for the Defendant.

This disposes of Docket Nos. 12 and 14.

IT IS SO ORDERED.

Dated: February 28, 2014

_____
EDWARD M. CHEN
United States District Judge